**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**JOHN C. BREITENBACH, JR.,
Individually and as Executor of the
Estate of DEBORAH J. BREITENBACH,**

        **Plaintiff,**

**v.**                                **1:16-CV-00011 (NAM/CFH)**

**UNITED STATES OF AMERICA;
NANCY A. CAFFREY, R.P.A.-C;
MOSES-LUDINGTON HOSPITAL;
and INTER-LAKES HEALTH, INC.,**

        **Defendants.**

---

**APPEARANCES:**

Joseph R. Brennan
Brennan, White Law Firm
163 Haviland Road
Queensbury, New York 12804
*Attorney for Plaintiff*

Grant C. Jaquith
United States Attorney
Karen Folster Lesperance
Assistant United States Attorney
Office of the United States Attorney
445 Broadway, Room 218
Albany, New York 12207
*Attorneys for Defendant United States of America*

Konstandinos D. Leris
Shawn F. Brousseau
Napierski, Vandenburgh Law Firm
296 Washington Avenue Extension
Albany, New York 12203
*Attorneys for Defendants Caffrey,
Moses-Ludington Hospital, and
Inter-Lakes Health, Inc.*

**Hon. Norman A. Mordue, Senior U.S. District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.  INTRODUCTION**

The trial in this action is scheduled to commence on November 18, 2019.  (Dkt. No. 83).  Familiarity with the underlying facts are assumed based upon this Court's prior Memorandum-Decision and Order.  (Dkt. No. 53).  Presently before the Court are the Defendants' motions in limine (Dkt. Nos. 65, 71, 79), and Plaintiff's amended responses (Dkt. No. 90, 91).[1]  For the following reasons, Defendants' motions are granted in part and denied in part.

**II.  DISCUSSION**

**A. Expert Testimony**

First, Defendants Nancy Caffrey, R.P.A.-C, Moses Ludington Hospital and Inter-lakes Health, Inc. (the "Moses Ludington Defendants") assert that Plaintiff's medical expert, Dr. David T. Bachman, should be precluded from testifying that the use of a bougie device during emergency intubations was part of the standard of care in 2014.  (*See generally* Dkt. No. 65-1).  Specifically, they claim that Dr. Bachman's opinion is based on a medical article that acknowledges that bougies were only used in 3.5 percent of initial intubation attempts in the Emergency Department.  (*Id.*, p. 2).  Defendants seize on this statistic and assert that "the only peer preview [sic] publication on the issue was inconclusive as to whether bougie use should be endorsed and the technique had not gained general acceptance as of 2014." (*Id.*, p. 5).  They

---

[1] Plaintiff's initial responses to Defendants' motions (Dkt. Nos. 87, 88) are rejected as they were filed by an attorney that, to the Court's knowledge, is not currently admitted to practice in the Northern District of New York.  As a courtesy to Plaintiff, the Court has considered his untimely amended filings (Dkt. No. 90, 91) despite his attorney's failure to comply with the Court's rules and deadlines.  Untimely filings will not be considered in the future.

claim that Dr. Bachman's opinion is unreliable because his "reliance on [this] article exhibits a huge analytical gap between the article on which he relies and the conclusions he makes regarding bougie use." (*Id*.). Similarly, the Government has also filed a motion arguing that Dr. Bachman's opinion is not based on sufficiently reliable data and methodology. (Dkt. No. 71, pp. 5–7).

In response, Plaintiff argues that Dr. Bachman's opinion is "more than sufficient" to create an issue of fact as to whether Defendants' failure to use a bougie departed from the standard of care. (Dkt. No. 91-1, pp. 5–6). Plaintiff relies on Dr. Bachman's expert report and deposition testimony and argues that Defendants' effort to exclude Dr. Bachman's testimony is an attempt at a "second bite at the apple" on an issue that the Court previously considered on summary judgment. (*See* Dkt. No. 90-1, pp. 3–5).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 imposes a "special obligation" on the trial court to make sure that scientific testimony is both relevant and reliable. Accordingly, District courts perform "a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702." *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011) (citing *Daubert*, 509 U.S. at 593). Specifically, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the

expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Generally, "[i]n determining whether an expert's opinion should be excluded as unreliable, 'the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.'" *Houser v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 470, 475 (W.D.N.Y. 2017) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). "An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266.

Here, Defendants do not challenge Dr. Bachman's qualifications as a medical expert, but rather the basis for his opinion that the use of a bougie during an emergency intubation was required under the standard of care in 2014. Relevantly, Dr. Bachman's expert report states that:

> With regards to airway management techniques, the [Defendant] providers also failed to observe [ ] standards of care. When attempting endotracheal intubation of a difficult airway, use of a bougie, as was done at Fletcher Allen, is consistently recommended.

4

> And when performing a cricothyroidotomy, use of a bougie is also recommended. . . .
>
> Ms. Caffrey's technique while attempting the oral intubation, when she did not use a bougie, and when performing the cricothyroidotomy, when she also did not use a bougie and when she incised the trachea vertically rather than the cricothyroid membrane horizontally, did not meet accepted standards of care. . . . As a result of these failures to meet accepted standards of care, Mrs. Breitenbach suffered a cardiac arrest with the resultant severe anoxic brain injury leading to her death on April 22, 2014.

(Dkt. No. 44-7, pp. 6–7).

After reviewing Dr. Bachman's resume, expert report and deposition testimony, the Court concludes that his opinions are sufficiently reliable to be admissible. The record shows that Dr. Bachman relied on more than just the one study cited by Defendants to reach his conclusions; rather he testified that "[his] conclusions were based on reviewing the record and [his] medical experience over the years." (Dkt. No. 44-8, p. 66). Dr. Bachman explained his medical background and experience in significant detail and provided Defendants with a clear account of the basis for his opinion about the required standard of care. (*See generally* Dkt. No. 44-7; Dkt. No. 44-8, pp. 48–66). He stated that his opinion that the use of a bougie was "consistently recommended" and part of the standard of care was also based on "advanced airway courses" he had attended and also from "textbooks by Ron Walls and others who really support the use of the Bougie." (Dkt. No. 44-8, p. 57). He also noted that "Weingart is another author that certainly recommends [the use of a bougie]." (*Id.*).

Although Defendants point to competing evidence disputing Dr. Bachman's opinion, their arguments are better suited for cross examination. Indeed, the Court previously found that a question of fact existed as to whether Defendants departed from the standard of care by not using a bougie during their initial intubation attempts, and whether that deviation caused

5

the Decedent's death. (Dkt. No. 53, pp. 24–25). Under the circumstances, the conflicting evidence presented by the parties must be weighed by the finder of fact. *See Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 412 (N.D.N.Y. 2012) (noting that "conflicting expert testimony . . . creates questions of fact and credibility determinations to be answered by the jury"); *Penrose v. United States*, No. 13-CV-1060, 2016 WL 796062, at *5–6, 2016 U.S. Dist. LEXIS 22285, at *15–18 (N.D.N.Y. Feb. 24, 2016) (finding that conflicting expert testimony creates questions of fact "best left to the fact finder").

In sum, the record shows that Dr. Bachman's opinion is based on his significant medical experience, the medical training he received over the years, and from certain medical authors on the subject matter. (*See generally* Dkt. No. 44-7; Dkt. No. 49-15; Dkt. No. 44-8, pp. 48–66). Dr. Bachman's opinion, therefore, rests on a sufficiently reliable foundation. Accordingly, the Court denies Defendants' motions (Dkt. Nos. 65, 71) to preclude Dr. Bachman's expert testimony. *See I.M. v. United States*, 362 F. Supp. 3d 161, 193–95 (S.D.N.Y. 2019) (rejecting the defendants' attempt to preclude the plaintiff's medical expert where the expert was qualified to provide testimony and the record contained enough support to ensure that the expert's testimony was sufficiently reliable); *see also Overstreet v. Virts*, 2019 WL 1331567, at *20–23, 2019 U.S. Dist. LEXIS 49527, at *59–69 (W.D.N.Y. Mar. 25, 2019) (holding that factual disputes regarding the standard of care "are appropriate subjects for cross-examination that go to the weight, not admissibility, of [an expert's] testimony").

**B. Testimony by the Decedent's Children**

The Moses Ludington Defendants also move to preclude testimony from the Decedent's adult children. (Dkt. No. 79). Specifically, they assert that Plaintiff never identified these individuals as potential witnesses in his Rule 26 disclosures and is therefore

6

precluded from calling them as witnesses at trial pursuant to Rule 37(c)(1). (*Id.*, pp. 3–4). Defendants add that there is no justification for Plaintiff's late disclosure, which denied them the opportunity to conduct depositions. (*Id.*, pp. 4–5). Alternatively, Defendants argue that even if these witnesses were properly disclosed, their testimony would be irrelevant because they were not present at the hospital during the Decedent's treatment and could not provide any relevant evidence with regard to damages. (*Id.*).

In response, Plaintiff argues that "no true prejudice would accrue through plaintiff's offer of testimony from the children of the decedent." (Dkt. No. 91-1, p. 3). Plaintiff states that "as far back as May of 2015, the plaintiff disclosed in his verified bill of particulars, the identity of both children and further represented that both children had suffered a pecuniary loss by reason of the death of their mother." (*Id.*). Plaintiff asserts that the "Defendants chose not to depose these witnesses yet now purport to claim surprise on the eve of trial." (*Id.*).

Under Rule 26, a litigant must disclose the identity of individuals "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). "The purpose of Rule 26(a)(1)(A) is to alert an opposing party of the need to take discovery of the named witness." *Krey v. Cuomo*, 340 F. Supp. 3d 109, 152 (N.D.N.Y. 2018). Parties are also required to update and supplement their disclosures and other discovery responses in "a timely manner." Fed. R. Civ. P. 26(e). If a party fails to disclose a witness under Rule 26(a) or (e), that witness may not be called unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). "In determining whether preclusion is appropriate, courts must consider: (1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the prejudice

7

to the opposing party from having to address the new evidence; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

Here, the record shows that Plaintiff included the Decedent's children on his pre-trial witness list but failed to identify them on the Rule 26(a) Disclosure, or in supplemental disclosures. (*See* Dkt. Nos. 77, 79-4). Moreover, Plaintiff provides no explanation for the omission of these witnesses on the required disclosures. (*See* Dkt. No. 91-1, p. 3). Discovery closed in this case in January 2018. (Dkt. No. 38). Based on the facts known to the Court, it is unclear what, if any, relevant testimony these witnesses could offer regarding the standard of care or damages. Plaintiff's witness list merely states that these witnesses would testify to "the condition of [their] mother when [they] last saw her prior to her death and as to losses and damages that occurred by and on behalf of the estate." (Dkt. No. 77, p. 2). However, these reasons do not suggest the children's testimony is sufficiently important to overcome the prejudice to Defendants caused by Plaintiff's noncompliance with the disclosure requirements. It is also unclear what testimony these witnesses could offer regarding the Decedent's condition prior to her death or damages that could not also be offered by Plaintiff, her husband. At a minimum, Plaintiff's failure has deprived Defendants of the opportunity to depose these witnesses, thereby denying them the chance to anticipate potential testimony and assess their credibility. And reopening discovery would not be justified given the many delays the Court has already permitted.

In sum, Plaintiff's failure to disclose these witnesses in accordance with Rule 26 was neither substantially justified nor harmless. Accordingly, Defendants' motion to preclude testimony (Dkt. No. 79) from the Decedent's children is granted. *See Richmond v. Gen. Nutrition Ctrs., Inc.*, No. 08-CV-3577, 2012 WL 762307, at *5, 2012 U.S. Dist. LEXIS 32070,

at *15–20 (S.D.N.Y. Mar. 9, 2012) (precluding from trial any damages-related computations and supporting documents not produced by the plaintiffs during discovery, as non-production was neither substantially justified nor harmless); *Briese v. Langton*, No. 09-CV-9790, 2011 WL 280815, at *11, 2011 U.S. Dist. LEXIS 6340, at *37–38 (S.D.N.Y. Jan. 10, 2011) (precluding the defendants from "utilizing, either on summary judgment or at trial, any documents not produced to plaintiffs during the specified discovery period").

### C. Evidence of Dismissed Causes Action

Finally, the Government seeks to preclude Plaintiff "from eliciting expert testimony or offering other evidence or arguments to establish a deviation from the standard of care with respect to claims of negligence for which Defendants were awarded summary judgment." (Dkt. No. 71, p. 4). The Government asserts that any evidence regarding alleged deviations rejected on summary judgment would be "inadmissible because it [is] irrelevant to Plaintiff's two surviving claims." (*Id.*). Further, the Government avers that "[p]ermitting Plaintiff to relitigate these issues would only confuse the jury and prejudice the Defendant, as the jury might believe it was tasked with deciding issues that have already been determined by the Court as a matter of law." (*Id.*, p. 5). In response, Plaintiff acknowledges that "the Court has established the law of the case" by way of the Court's Decision dated August 29, 2018. (Dkt. No. 90-1, pp. 1–2). Plaintiff further states that he would not attempt to "resuscitate allegations and contentions which have been previously decided by the Court." (*Id.*, p. 2).

On summary judgment, the Court narrowed the issues for trial to: (1) whether Caffrey and Dr. Strum were required to use a bougie during the emergency intubation; (2) whether they erred in the type of incision used in the surgical cricothyrotomy; and (3) whether any such departure from the standard of care caused the Decedent's death. (Dkt. No. 53, pp. 24–28).

9

Thus, any evidence or expert testimony regarding alleged departures from the standard of care beyond these questions would be irrelevant and inadmissible at trial. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). The Court will allow Plaintiff to present evidence necessary to establish the context and surrounding circumstances of the Decedent's health condition and medical treatment. But the Court will not permit any evidence or argument on issues previously decided on summary judgment, including evidence related to Defendants': (1) initial response time; (2) decision not to transfer the Decedent via helicopter; (3) decision to perform the rapid sequence intubation prior to a cricothyrotomy; or (4) selection of a 3.5-millimeter tube during the surgical cricothyrotomy. (*See generally* Dkt. No. 53, pp. 19–28).

Accordingly, the Government's motion to preclude expert testimony and other evidence related to issues previously decided on summary judgment is granted. *See Morales v. New York State Dep't of Labor*, 530 F. App'x. 13, 15 (2d Cir. 2013) (affirming district court's exclusion of evidence related to a claim that "had already been dismissed at summary judgment"); *see also Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148, 2019 WL 4058993, at *4–5, 2019 U.S. Dist. LEXIS 146675, at *9–12 (W.D.N.Y. Aug. 28, 2019) (granting motion in limine to preclude the admission of evidence that would be "irrelevant to the issues remaining after summary judgment").

### III.  CONCLUSION

For these reasons, it is

**ORDERED** that the Moses Ludington Defendants' motion (Dkt. No. 65) to preclude Dr. Bachman from testifying as to the use of a bougie device and the standard of care is **DENIED**; and it is further

**ORDERED** that the Government's motion (Dkt. No. 71) is **GRANTED** as to preclusion of testimony regarding issues previously determined by the Court on summary judgment (Dkt. No. 53), but is **DENIED** to the extent it seeks to limit Dr. Bachman's testimony regarding the use of a bougie device and the standard of care; and it is further

**ORDERED** that the Moses Ludington Defendants' motion (Dkt. No. 79) to preclude testimony from the Decedent's children is **GRANTED**.

**IT IS SO ORDERED.**

Date: November 5, 2019
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge